**REEDON OF FARIBAULT, INC., d.b.a. Best Western Galaxy Motor Lodge, Respondent,**

v.

**FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., Appellant,**

**Palmer and Cornell, Inc., Defendant.**

**No. C3-85-1503.**

Court of Appeals of Minnesota.

May 13, 1986.

Review Granted July 16, 1986.

· James R. Keating, Faribault, for respondent.

Chet D. Deter, Minneapolis, for appellant.

Heard, considered and decided by RANDALL, P.J., and PARKER and FOLEY, JJ.

## OPINION

RANDALL, Judge.

Fidelity and Guaranty Insurance Underwriters, Inc. (Fidelity), appeals from the trial court's judgment in favor of respondent Reedon of Faribault, Inc. (Reedon), awarding Reedon damages incurred when Fidelity and its agents, Palmer and Cornell, negligently underinsured the Galaxy Motel owned by Reedon. Prior to trial, Palmer and Cornell executed a *Pierringer* release for claims arising in their individual capacity, not as Fidelity's agent.

After a trial the matter was submitted to the jury on a special verdict form. The jury found that Fidelity was negligent in providing fire insurance on the Galaxy. The jury found Palmer, as Fidelity's agent, negligent. The jury found Reedon contributorily negligent in procuring inadequate fire insurance on the Galaxy.

The jury apportioned negligence as follows: Fidelity 45%; Palmer, as Fidelity's agent, 45%; Reedon 10%; and Palmer and Cornell, acting in an individual capacity and not as Fidelity's agent, not negligent. The trial court added the 45% negligence attributable to Fidelity to the 45% negligence attributed to Palmer as Fidelity's agent, and entered judgment against Fidelity for 90% of the loss, or $44,680. The stipulated amount of Reedon's loss was $49,643.83.

Fidelity moved for judgment notwithstanding the verdict or a new trial, and for an order limiting recovery against Fidelity to 45% of the total amount of the loss. The trial court, by an order entered July 17,

1986, denied Fidelity's motions. We affirm.

## FACTS

Reedon purchased fire insurance from Palmer and Cornell, Inc., in 1981 to cover the Galaxy Motel. The policy was written through Fidelity. The Fidelity policy was written on the same terms, with the same coverage limits, as a previous policy written through South Carolina Insurance Company. South Carolina had insured the Galaxy as two separate buildings with $486,000 on building one and $324,000 on building two. Shortly after the policy was written, Fidelity's engineering department inspected the Galaxy.

In 1982 the Galaxy expanded by adding additional motel units as well as a conference room which joined together the two separate buildings. Coverage on building one was increased to $586,000 to cover the additions. The coverage was added to building one because a fire door separated the conference room from building two. Coverage on building two remained the same.

In spring, 1982, the Galaxy installed a sprinkler system in order to obtain a rate reduction. After installation of the sprinkler system was complete, Fidelity ordered a second inspection. An Independent Service Organization (ISO) representative inspected the Galaxy for Fidelity to determine whether the Galaxy qualified for a rate reduction. The ISO inspector determined that the Galaxy should be rated as one building divided in two sections, rather than as two separate buildings because the two sections were not separated by a fire door. Fidelity denied Reedon's request for a premium reduction and notified Palmer and Cornell that the Galaxy's rates would increase six-fold due to the lack of a fire door.

Ralph Palmer orally informed Reedon that the building was not ratable as two buildings and would be rated as one building with $910,000 of coverage. Reedon immediately ordered the fire door.

While Reedon was waiting for the fire door to arrive, a fire originated in Galaxy's sauna destroying what had been designated as building two and causing $373,643.83 in damages. Fidelity paid its policy limits for building two, $324,000. The Galaxy sustained $49,643.83 in stipulated, uncovered losses. Fidelity claimed, and the jury found, that the policy had not been modified to cover the Galaxy as one building. This was the basis for the jury's finding of negligence against Fidelity. Prior to trial Reedon signed a *Pierringer* release. The release specifically referred to claims arising from Palmer and Cornell's individual negligence, not its negligence as Fidelity's agent.

The jury found Fidelity 45% negligent; Palmer, as Fidelity's agent, 45% negligent; Reedon 10% negligent; and Palmer, acting in an individual capacity and not as Fidelity's agent, not negligent. The trial judge imputed Palmer's negligence to Fidelity, and after reducing the loss by Reedon's percentage of negligence, entered judgment for $44,680 against Fidelity.

## ISSUES

1. Was the evidence sufficient to support the jury's finding of independent negligence on the part of Fidelity?

2. Did the *Pierringer* release signed by Palmer and Cornell release Fidelity as well?

## ANALYSIS

### I.

*Fidelity's Liability*

This is a case involving the respective liability of multiple defendants. Fidelity argues that the jury's verdict as to Fidelity's independent or individual negligence is unsupported by the evidence.

Fidelity claims that its only liability is vicarious, arising from its reliance on Palmer's computations and descriptions of the property, and that it exercised reasonable care by providing a policy that met the specifications supplied by Palmer and Ree-

don. Reedon argues that once Fidelity undertook inspections of the Galaxy on two separate occasions, it assumed a duty to provide adequate insurance.

The special verdict contained the following interrogatories:

5. Was defendant USF & G Insurance Underwriters, Incorporated negligent in providing fire insurance to plaintiff?

Yes _X_ No ___

\* \* \* \* \* \*

9. Was plaintiff Reedon of Faribault, Incorporated, negligent in procuring inadequate fire insurance?

Yes _X_ No ___

\* \* \* \* \* \*

11. Was defendant Ralph Palmer, as an agent of USF & G Insurance Underwriters, Incorporated, negligent in providing inadequate fire insurance to plaintiff Reedon of Faribault, Incorporated?

Yes _X_ No ___

\* \* \* \* \* \*

13. Was defendant Ralph Palmer while acting in an individual capacity—other than an agent of USF & G—negligent in providing inadequate fire insurance to plaintiff Reedon of Faribault, Incorporated?

Yes ___ No _X_

\* \* \* \* \* \*

Taking all the negligence that contributed as a direct cause to the plaintiff's loss to be 100%, what percent or proportion thereof do you attribute to:

(a) United States Fidelity and Guaranty Insurance, Inc.  45%
(b) Palmer and Cornell Inc. (individual capacity)  0%
(c) Ralph Palmer, as agent of USF & G Inc.  45%
(d) Reedon of Faribault, Inc.  10%
TOTAL  100%

Examining the special verdict form, we conclude that Palmer's individual negligence, not his negligence as Fidelity's agent, was submitted to the jury in interrogatory no. 13. We hold that the trial court's submission of the interrogatories in this manner was proper. We note that Palmer and Cornell were independent insurance brokers. After being contacted by Reedon (Reedon had contacted other agencies with the same request) Ralph Palmer contacted various insurance companies on his own explaining Reedon's needs and soliciting bids. Palmer was acting as an independent agent and not as an agent for any of the companies he had contacted. After Reedon selected Fidelity's bid through Palmer, the agency relationship between Palmer and Fidelity was established. Fidelity does not dispute this.

Fidelity's individual negligence was submitted to the jury in interrogatory no. 5. Palmer's liability as Fidelity's agent was submitted to the jury in interrogatory no. 11. The trial court interpreted these answers by imputing Palmer's liability, as an agent of Fidelity, as a matter of law. Fidelity argues that evidence does not support the trial court's imputing Palmer's agency negligence to it. We affirm the trial court on this issue.

■ Under settled principles of law, Fidelity, as principal, was liable for its agent's negligent acts. "[I]t is generally the rule that an insurance company is liable for the torts of its agents when they were acting within the scope of their employment." *Eddy v. Republican National Life Insurance Co.*, 290 N.W.2d 174, 176 (Minn. 1980). The court properly interpreted the answers to the special verdict interrogatories, under *Eddy*, by imputing Palmer's liability as Fidelity's agent to Fidelity.

Fidelity concedes that, once their bid was accepted by Reedon after having been submitted by Palmer and Cornell, thereafter, Palmer was its agent and he acted within the scope of his agency. Fidelity does not dispute the finding that Palmer, as Fidelity's agent, acted negligently. Under these circumstances, the trial judge properly combined the percentages of negligence apportioned to Fidelity and to Palmer, acting as Fidelity's agent, by interpreting the special verdict answers to require Fidelity to pay 90% of the damages.

The issue of Fidelity's individual negligence went to the jury on the following instructions:

> Ladies and gentlemen of the jury, there will be two changes. I am also instructing you that USF & G Incorporated may be liable by its own actions, independently of any actions of Mr. Ralph Palmer if you so find from the facts.

This instruction relates to special verdict interrogatory no. 5. We hold the jury's finding of Fidelity's independent negligence is supported by the evidence. Fidelity conducted two inspections of the Galaxy and knew, or should have known, that the coverage was inadequate. Fidelity argues that it had no statutory duty to inspect. We affirm the jury's finding that once Fidelity undertook to inspect the Galaxy, it assumed a duty to exercise reasonable care in drafting the Galaxy's coverage.

## II.

### Pierringer Release

When Palmer and Cornell executed the *Pierringer* release with Reedon, the only liability that Reedon intended to release was that for negligent acts by Palmer and Cornell as individuals separate from those committed by Fidelity. The release stated, in pertinent part:

> Reedon * * * does hereby release and forever discharge Palmer and Cornell, Inc., its agents, heirs and assigns, of and from any claims * * * arising from or to arise from, the fire which occurred on or about September 25, 1982.
>
>    *    *    *    *    *    *
>
> The undersigned expressly reserves all its rights to the balance of the whole cause of action arising out of the above event, which it may have against Fidelity and Guaranty Insurance Underwriters, Inc.

Fidelity claims that by executing the *Pierringer* release, Palmer and Cornell released Fidelity as well. Fidelity bases its argument on *Serr v. Biwabik Concrete Aggregate Co.*, 202 Minn. 165, 278 N.W. 355 (Minn.1938) which holds that the release of one joint tortfeasor releases all tortfeasors. Since we have held that the release signed by Palmer and Cornell referred only to their liability for acting individually, it follows that the release did not apply to Palmer's liability as Fidelity's agent. While appellant cites the general rule of *Serr, Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978), approved the use of the *Pierringer* releases in Minnesota and created a specific exception to the *Serr* rule. Reedon, in executing a *Pierringer* release, expressly reserved its right to proceed against Fidelity.

The *Pierringer* release, which released only those claims against Palmer and Cornell, in their individual capacity, did not absolve Fidelity of vicarious liability for negligent acts of Palmer and Cornell as Fidelity's agents. We will not disturb the trial court's decision to require Fidelity to pay 90% of the loss.

We hold that Palmer and Cornell's execution of the *Pierringer* release did not release Fidelity. Palmer and Cornell's payment of $15,000 constituted only a full and final settlement of any negligence attributable to them in their individual capacity. The jury found Palmer and Cornell's negligence, in their individual capacity, to be zero. Had Palmer and Cornell proceeded through trial, they would not have had to pay anything in their individual capacity. The $15,000 respondent received upon signing the *Pierringer* release does not serve as a credit to Fidelity.

This represents a case where, among multiple defendants, one defendant settled by *Pierringer* release, avoiding risk of trial, but giving up the chance to exonerate himself at trial. The nonsettling defendants go to trial assured that the negligence apportioned to the settling defendant will not be paid by them. In this case the jury apportioned no negligence to the settling defendant. Fidelity, through individual negligence and vicarious liability, bears the loss, less only the 10% negligence attributed to respondent.

## DECISION

The trial court did not err in upholding the jury's finding of Fidelity's vicarious and individual liability. The *Pierringer* release signed by Palmer and Cornell, as individuals, did not relieve Fidelity of liability on the judgment for the percentage of negligence attributable to Palmer, acting not as an individual but as an agent for defendant USF & G.

Affirmed.

FOLEY, J., dissents.

FOLEY, Judge (dissenting).

I respectfully dissent. In my view, the trial court's attempt to reconcile the jury's apportionment of fault in the special verdict was erroneous as a matter of law.

The majority holds that the negligence of Palmer and Cornell, Incorporated (Palmer & Cornell) was properly imputed to Fidelity since a principal is vicariously liable for the torts of its agents while acting within the scope of their authority. With all due respect, I think this result merely exalts form over substance and glosses over the effect of the *Pierringer* release here.

Despite Fidelity's concession prior to and throughout the trial that Palmer & Cornell was its agent and was acting within the scope of its authority during negotiations with Reedon, the majority construes the *Pierringer* release as a discharge only of Palmer and Cornell's liability as individuals. The only evidence in the case with respect to conduct by Palmer & Cornell, as it related to insurance coverage, was that as agent for Fidelity, a conceded fact. There was no independent conduct by Ralph Palmer as an individual on this issue.

The question in the special verdict relating to Palmer and Cornell's individual negligence was erroneously submitted and could have no other effect on the jury except to cause confusion as to the effect of the *Pierringer* release. The distorted construction of the *Pierringer* release by

the trial court overlooks the general rule that an agent, acting within the scope of his or her authority, is not personally liable on a contract entered into for a known principal. *See Kost v. Peterson,* 292 Minn. 46, 193 N.W.2d 291 (1971). It is equally settled that "a valid release or exoneration of the servant releases the master, the latter's liability for a tort committed in the scope of employment being derivative only." *Serr v. Biwabik Concrete Aggregate Co.,* 202 Minn. 165, 177, 278 N.W. 355, 362 (1938). Further, an agent acting within the scope of authority may be held personally liable for conversion or false representation, neither of which is claimed in this case. *See Northwestern Upholstering Co. v. First National Bank & Trust Co.,* 193 Minn. 333, 258 N.W. 724 (1935) (conversion); *Erickson v. Mathwig,* 226 Minn. 55, 31 N.W.2d 918 (1948) (fraud).

The *Pierringer* release in this case is not under attack in the same sense as in *Serr,* where the defendant sought to set a release aside. Nonetheless, the evidence here plainly established that the only relationship between Palmer & Cornell and Fidelity was that of agent and principal. It acted only as Fidelity's agent.[1] It is well-founded that the theory upon which a case is tried becomes the law of the case. *Atlantic Mutual Insurance Co. v. Judd. Co.,* 380 N.W.2d 122, 124 (Minn.1986).

As the majority illustrates, *Pierringer* releases operate as "piecemeal" approaches to litigation by allowing a plaintiff to settle with some tortfeasors without destroying the joint liability of parties whose negligence concurs. *See Hosley v. Armstrong Cork Co.,* 383 N.W.2d 289, 292 (Minn.1986); *Bixler by Bixler v. J.C. Penney Co. Inc.,* 376 N.W.2d 209, 215 (Minn.1985). However, settlement in this manner "cannot be done to the prejudice of the remaining non-settling defendants." *Eckblad v. Farm Bureau Mutual Insurance Co.,* 371 N.W.2d 78, 81 (Minn.Ct.App.1985), *pet. for*

1. There is no evidence to suggest that in contacting any other insurance companies relative to coverage for Reedon, Palmer & Cornell committed any negligent acts. It is their conduct as agent for Fidelity that is in issue here.

*rev. denied* (Minn. Sept. 26, 1985). I believe such prejudice results here.

Unlike a covenant not to sue which discharges a settling defendant *pro tanto* from liability and leaves the door open to a contribution claim, see *Gronquist v. Olson,* 242 Minn. 119, 64 N.W.2d 159 (1954), a settling defendant under a *Pierringer* release "does not settle for less than his share, but precisely for his share—no less." Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota,* 3 Wm. Mitchell L.Rev. 1, 18 (1977) [hereinafter *Pierringer Release*]. Since settlement under a *Pierringer* agreement is not less than the tortfeasor's "fair share", he or she is not affected by a subsequent finding of comparative fault. Likewise, a non-settling defendant, as here, is guaranteed that it will never pay more than its share—the percentage of causal negligence attributed to the non-settling defendant at trial. *Id.* (citing *Pierringer v. Hoger,* 21 Wis.2d 182, 193, 124 N.W.2d 106, 112 (1963). *See also Hosley v. Armstrong Cork Co.,* 364 N.W.2d 813 (Minn.Ct.App. 1985), *reversed on other grounds,* 383 N.W.2d 289 (Minn.1986). In essence, a plaintiff who executes a *Pierringer* release agrees to indemnify the settling tortfeasor for any amount owed to the non-settling tortfeasor under a contribution judgment. *See Pierringer Release* at 19–20.

Since Fidelity conceded throughout this case that Palmer & Cornell was its agent and that it acted within the scope of its authority when the events giving rise to the litigation occurred, it logically follows that the *Pierringer* agreement executed by plaintiff released Palmer & Cornell entirely. Important language in the *Pierringer* release is as follows:

IN CONSIDERATION of the sum of Fifteen Thousand Dollars ($15,000), receipt of which is hereby acknowledged, the undersigned, Reedon of Faribault, Inc., d/b/a Best Western Galaxie Motor Lodge, does hereby release and forever discharge Palmer and Cornell, Inc., its agents, successors, heirs and assigns, of and from *any claims,* actions, causes of action, or *any claim* for loss or damage of any kind or nature whatsoever, which the undersigned now has, or may hereafter have, on account of, or in any way growing out of, any and all known and unknown, foreseen and unforeseen, property damage and personal injuries and consequences thereof, resulting or to result, or arising from or to arise from, the fire which occurred on or about September 25, 1982, at or near the Best Western Galaxie Motor Lodge in the City of Faribault, County of Rice, State of Minnesota. (Emphasis supplied.)

I emphasize that the release discharges Palmer & Cornell from *"any* claims." There were no words or phrases limiting the effect of the release to only personal liability of either Palmer & Cornell or the individual corporate members. If the *Pierringer* release includes a release of any potential claims of negligence by Reedon with respect to the conduct of Palmer & Cornell in contacting other insurance companies relative to coverage, the choice of the language in the release (any claims) selected by the plaintiff must, as a matter of law, be construed to include as well a release of Palmer & Cornell as Fidelity's agent under the doctrine of vicarious liability, and thus a release of Fidelity under that doctrine.[2] Thus, even when the jury found causal negligence against Palmer & Cornell as Fidelity's agent, Fidelity, under the principles of *Pierringer v. Hoger,* was given assurance as the non-settling defendant that it would be protected from the effects of actionable negligence of its agent Palmer & Cornell for any uncovered loss sustained by the plaintiff under the doctrine of vicarious liability. As stated by now Justice Simonett in his often cited law review article:

There would not seem, * * * to be any incentive for plaintiff to give defendant *A* a *Pierringer* release so as to continue his lawsuit against defendant *B* alone, *if*

---

**2.** If the *Pierringer* release is ambiguous in any material respect, the document should be construed against the plaintiff, whose counsel drafted it.

*B's exposure is solely vicarious and depends on A being found negligent. To give A a Pierringer release in that situation is also to release B.* On the other hand, if *B*'s status as a true vicarious indemnity is in dispute, plaintiff might chance giving *A* a modified *Pierringer* and hope to recover from *B* by showing *B*'s liability is not vicarious.

*Pierringer Release* at 25 (emphasis supplied).

The majority relies on language in the *Pierringer* as follows: "The undersigned expressly reserves all its rights to the balance of the whole cause of action arising out of the above event, which it may have against Fidelity and Guaranty Insurance Underwriters, Inc." The only reasonable construction that can be given to this quoted section of the release is that Reedon, the plaintiff, could pursue a claim against Fidelity for any *independent* causal negligence apart from the principal/agent relationship.

In addition to the trial court's interpretation of the *Pierringer* release is the troubling manner in which the case was submitted to the jury. Although the trial court spends almost three full pages of the transcript instructing the jury on breach of contract, not a single question was asked concerning breach of contract on the special verdict form. The trial court seemingly wanders through the law of contracts, and ends the journey with negligence without any instruction whatever on direct cause, an undeniably crucial element of actionable negligence.

The only possible reconciliation of the verdict, as a matter of law, is to find Fidelity liable for only 45% of the loss, the amount of its independent negligence. The judgment based upon the special verdict is erroneous and should be reversed so as to require Fidelity to pay only this amount.

A copy of the special verdict returned by the jury in this case is attached hereto. I note that in question No. 11 references made to Ralph Palmer could only have been meant to refer to Palmer & Cornell, the corporate entity, since Ralph Palmer only acted as a corporate representative of Palmer & Cornell. The same error was made in the comparative fault question No. 15(c) at the end of the special verdict. The question should have referred to Palmer & Cornell as agent, not Ralph Palmer as agent.

The parties had stipulated that "uncovered losses" of plaintiff amounted to $49,-643.83, which rendered question No. 1 totally unnecessary. The amount of loss sustained by plaintiff was not in issue—the legal *cause* of loss, however, was vigorously contested. By wording question No. 1 as the trial court did, "damages resulting from *inadequate* insurance" seems to presuppose a finding of negligence against Fidelity or its agent, when the parties's stipulation merely referred to "*uncovered* losses." These terms have an entirely different meaning, but the jury was not told the difference.[3]

Upon a total consideration of the case, the judgment should be modified to hold Fidelity liable for only 45% of the uncovered loss.

STATE OF MINNESOTA.

COUNTY OF RICE

IN DISTRICT COURT
CIVIL DIVISION
THIRD JUDICIAL DISTRICT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Reedon of Faribault, Incorporated,
d/b/a Best Western Galaxy Motor Lodge,

Plaintiff,

vs.

Fidelity and Guaranty Insurance Underwriters, Incorporated and Palmer and Cornell, Incorporated.

Defendants.

SPECIAL VERDICT

Ct. File #22406

3. In its instructions, the trial court referred to "uncovered losses" and not "inadequate damages," the phrase used in question No. 1 of the special verdict.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

We, the jury in the above-entitled action, answer the following questions:

1. What sum of money will fairly compensate Reedon of Faribault, Incorporated, for its damages resulting from inadequate insurance occurring on September 25, 1982?

Answer $49,643.83

2. Did Fidelity and Guaranty Insurance Underwriters, Incorporated provide a policy of insurance to plaintiffs? Yes **X** No_____

3. Did defendant USF&G Insurance Underwriters, Incorporated initially limit their fire loss exposure by providing fire insurance on two separate buildings with stated amounts on each?

Yes **X** No_____

4. Was the insurance contract (policy) between USF&G Insurance Underwriters Incorporated and plaintiff later modified to provide $910,000 of fire insurance on the building complex? Building complex means the two separate motel buildings and swimming pool considered as one building.

Yes_____ No **X**

5. Was defendant USF&G Insurance Underwriters, Incorporated negligent in providing inadequate fire insurance to plaintiff?

Yes **X** No_____

6. If you Answer Question 5 "yes", then answer this question: Was such negligence a direct cause of the plaintiff's loss?

Yes **X** No_____

7. Were defendants Palmer and Cornell negligent in providing inadequate fire insurance to plaintiff?

Yes_____ No_____

8. If you answer Question 7 "yes", then answer this question: Was such negligence a direct cause of the plaintiff's loss?

Yes_____ No_____

9. Was plaintiff Reedon of Faribault, Incorporated, negligent in procurring inadequate fire insurance?

Yes $\times$     NO_____

10. If you answer Question 9 "yes", then answer this question: Was such negligence a direct cause of the plaintiff's loss?

Yes $\times$     No_____

11. Was defendant Ralph Palmer, as an agent of USF&G Insurance Underwriters, Incorporated, negligent in providing inadequate fire insurance to plaintiff Reedon of Faribault, Incorporated?

Yes $\times$     No_____

12. If you answer Question 11 "yes", then answer this question: Was such negligence a direct cause of the plaintiff's loss?

Yes $\times$     No_____

13. Was defendant Ralph Palmer while acting in an individual capacity -- other than an agent of USF&G -- negligent in providing inadequate fire insurance to plaintiff Reedon of Faribault, Incorporated?

Yes_____     No $\times$

14. If you answer Question 13 "yes", then answer this question: Was such negligence a direct cause of the plaintiff's loss?

Yes_____     No_____

15. If you answer yes to two or more of the questions (6), (8), (10), (12), (14), then answer the following:

Taking all the negligence that contributed as a direct cause to the plaintiff's loss to be 100%, what percent or proportion thereof do you attribute to:

(a) United States Fidelity and Guaranty Insurance, Inc. __45__%

(b) Palmer and Cornell Inc. (individual capacity) __0__%

(c) Ralph Palmer, as agent of USF&G Inc. __45__%

(d) Reedon of Faribault, Inc. __10__%

TOTAL     100 %

Dated at Faribault, Minnesota, this _8th_ day of May, 1985.

This verdict was rendered at the hour of _9:20_ o'clock _p_.m.

<u>Charles G. Madson</u>
Foreman/Forewoman

<u>Francis Koderlik</u>

<u>Eleanor Kenney</u>

<u>_____</u>

<u>Dean K. Nelson</u>

<u>Sherry J Dilley-Hayk</u>