*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1071**

Jane Doe,
Appellant,

vs.

Gavin Patrick Meany,
Defendant,

Marie Olseth MD LLC d/b/a West End Consultation Group,
Respondent.

**Filed May 13, 2024**
**Affirmed**
**Segal, Chief Judge**

Hennepin County District Court
File No. 27-CV-20-11079

Michael A. Bryant, Bradshaw & Bryant, PLLC, Waite Park, Minnesota (for appellant)

Mark A. Solheim, Kevin T. McCarthy, Patrick H. O'Neill, III, Larson • King, LLP, St. Paul, Minnesota (for respondent)

Considered and decided by Frisch, Presiding Judge; Segal, Chief Judge; and Reilly, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**SEGAL**, Chief Judge

Appellant challenges the summary-judgment dismissal of her vicarious-liability and negligent-retention claims against respondent clinic. Her claims against respondent were brought as part of a lawsuit against appellant's former psychiatrist alleging abuse by the psychiatrist. Appellant settled her claims against the psychiatrist. Because appellant's vicarious-liability claim was extinguished by her release of the psychiatrist, and appellant did not present evidence sufficient to create a genuine issue of material fact on her negligent-retention claim, we affirm.

## FACTS

Appellant Jane Doe is a former patient of Gavin Patrick Meany, a psychiatrist who had practiced at a clinic operated by respondent Marie Olseth MD LLC d/b/a West End Consultation Group (West End). West End entered into an independent-contractor agreement with Meany in 2016. Pursuant to the agreement, West End conducted all billing and recordkeeping services for Meany. The agreement also required Meany to abide by certain work standards "in accordance with customary professional standards in the community, and any and all rules and regulations duly promulgated by the State of Minnesota." This included remaining in good standing as a licensed physician with the Minnesota Board of Medical Practice (the medical board). Meany controlled his practice and could accept or reject any patients referred to him by West End. The contract contained no financial targets and set no hours of work or billable-hours requirements for Meany.

2

Doe became a patient of Meany's in 2017. She located Meany through a Google search and sought care with Meany because he was "in the area" and the clinic had "an ADHD . . . specialty." Doe said she looked at Meany's online profile and he "seemed fine."

Doe alleged that Meany sexually abused her and engaged in other inappropriate conduct between 2017 and 2018. The nature of Meany's abusive conduct, as alleged by Doe in her complaint, included stalking and intimidation, "transference behavior" during therapy sessions, prescription medication withholding, threats to her husband, threats to commit her for an inpatient eating disorder, falsification of clinical records, and inappropriate touching and language.

Doe continued to see Meany and did not report his misconduct to anyone at West End. She also never submitted any complaints concerning Meany through West End's confidential complaint form that was available online. Doe later established care at a different clinic when Meany left West End.

After disclosing the abuse to her new therapist, Doe reported Meany's misconduct to the medical board. Meany was charged about a year later with criminal sexual conduct of another patient. *See* Minn. Stat. § 609.344, subd. 1(h)(i)-(ii) (2018). Meany pleaded guilty and was sentenced. *See State v. Meany*, No. A23-0296, 2024 WL 910662, at *1 (Minn. App. Mar. 4, 2024).

3

Doe brought a medical malpractice and negligence suit against both Meany and West End. She sued Meany for medical malpractice, nuisance, violations of the Minnesota Health Records Act, Minn. Stat. §§ 144.291-.298 (2022), and invasion of privacy; she sued West End for vicarious liability and negligent hiring, supervision, and retention. West End moved to dismiss Doe's claims or, alternatively, for summary judgment in its favor.

The district court dismissed the medical-malpractice, negligence, negligent-supervision, and negligent-hiring claims against West End, in part because Doe failed to provide sufficient expert affidavits to support her claims. *See* Minn. Stat. § 145.682 (2022). But the district court declined to dismiss the vicarious-liability and negligent-retention claims based on the court's determination that there were questions of fact "regarding the extent of [West End's] control of [Meany]'s performance, work area, and professional expectations" and "when [West End] learned or should have learned of [Meany]'s alleged activity, and whether [West End] could have taken appropriate action at that point."

Doe subsequently settled all claims against Meany with a *Pierringer* release.[1] Meany was then dismissed from the suit.

---

[1] This type of release is named after *Pierringer v. Hoger*, 124 N.W.2d 106, 108 (Wis. 1963). The use of a *Pierringer* release was approved by the supreme court in *Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn. 1978). The basic elements of a *Pierringer* release are:

> (1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence; (2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) the plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the nonsettling parties and to

After completing additional discovery, West End moved for summary judgment on the two remaining claims—the vicarious-liability and negligent-retention claims. The district court granted West End's motion, concluding that the *Pierringer* release of Meany extinguished Doe's vicarious-liability claim; Meany was an independent contractor, not an employee; West End was not vicariously liable for Meany's actions under the theory of apparent authority; and Doe did not present evidence sufficient to demonstrate the existence of a genuine issue of material fact to support her negligent-retention claim. Doe now appeals the district court's dismissal of her vicarious-liability and negligent-retention claims.

## DECISION

"We review a grant of summary judgment de novo." *Warren v. Dinter*, 926 N.W.2d 370, 374-75 (Minn. 2019). "In conducting this review, we view the evidence in the light most favorable to the nonmoving party . . . and resolve all doubts and factual inferences against the moving part[y]." *Id.* (quotations omitted). Summary judgment is appropriate if the moving party shows that "there is no genuine issue as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. A genuine issue of material fact exists "when reasonable persons might draw different conclusions from the evidence presented." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.

---

satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released.

*Graff v. Robert M. Swendra Agency, Inc.*, 800 N.W.2d 112, 115 n.3 (Minn. 2011) (quoting *Frey*, 269 N.W.2d at 920 n.1).

5

1997).  But "[a] defendant is entitled to summary judgment as a matter of law [if] the record reflects a complete lack of proof on an essential element of the plaintiff's claim."  *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).

Doe argues on appeal that the district court erred in determining that the *Pierringer* release of Meany released Doe's claim for vicarious liability against West End.  Doe also argues that the district court erred in determining that Meany was an independent contractor, not an employee of West End.  Finally, Doe argues that the district court erred in dismissing her negligent-retention claim because the issue of whether West End knew or should have known that Meany had dangerous proclivities is a fact issue that should have been presented to the jury.  We address first Doe's argument concerning the impact of the *Pierringer* release on her vicarious-liability claim.

## I.     The *Pierringer* release extinguished Doe's claim for vicarious liability against West End.

A *Pierringer* release is a form of release that generally allows a plaintiff in a personal-injury suit to settle claims against one or more defendants, "while reserving the balance of the cause of action against the nonsettling defendants."  *Reedon of Faribault, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, 418 N.W.2d 488, 490 (Minn. 1988); *see also Frey*, 269 N.W.2d at 920 n.1.  The settling defendants are dismissed, and the nonsettling joint tortfeasors are liable for only their "percentage of causal negligence."  *Frey*, 269 N.W.2d at 922.  In interpreting the terms of a release, we apply de novo review—the same standard applicable to appellate review of settlement agreements and other types of contracts.  *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581-82 (Minn. 2010).

The *Pierringer* release signed by Doe in this case contained a full and complete release of Meany. It also provided for Doe to indemnify and hold Meany harmless from any claims, including crossclaims by the nonsettling defendant—West End—against Meany for indemnity or contribution:

> [Doe] further covenants and agrees to indemnify and to hold harmless [Meany] from any and all claims in the nature of contribution or indemnification . . . by any and all non-settling parties, or claims that could have been asserted in the form of crossclaims against [Meany], for indemnity and/or contribution, whether arising out of common law, statute or contract, and . . . [Doe] agrees to satisfy any judgment or judgments that may be obtained in her favor against any and all non-settling parties to the extent of that portion or percentage thereof which [Meany] is found to be liable even if the amount of such satisfaction should be more than the sum received in consideration for this release.

Typically, such a release would preserve the plaintiff's claims against nonsettling defendants for their own tortious conduct but would extinguish claims premised on vicarious liability for the tortious conduct of a settling defendant. *See Sershen v. Metro. Council*, 974 N.W.2d 1, 13-14 (Minn. 2022) (noting *Pierringer* releases generally do not bar direct claims). This result is based on the established principle that a release of a tortfeasor serves to release a vicarious-liability claim brought against the tortfeasor's principal for the tortious conduct of the agent. *Booth v. Gades*, 788 N.W.2d 701, 707 & n.6 (Minn. 2010); *Reedon*, 418 N.W.2d at 490-91. Doe argues that the district court erred in applying this principle here because the *Pierringer* release contained a provision that expressly reserved claims against West End, including claims for vicarious liability. That provision states:

7

> Nothing herein shall be construed as releasing or discharging any non-settling persons, entities, or corporations from liability for whatever portion or percentage of [Doe's] damages are found to be attributable to their illegal act, fault, vicarious liability, negligence or other tortious conduct.

West End argues that this language does not prevent the release of West End because, as the district court stated, it is "inconsistent with the essential piece of a *Pierringer* release, that all claims deriving from the settling party are released." We agree for two reasons. First, the *Pierringer* release was entered into only between Doe and Meany. West End was not a party to the release and thus the provisions of the release do not bind West End. Second, a vicarious-liability claim is by definition a derivative claim. By entering into the *Pierringer* release with Meany, Doe extinguished Meany's liability such that there was no liability to impute by operation of law to West End, despite Doe's efforts to preserve the vicarious-liability claim. *See Booth*, 788 N.W.2d at 707 & n.6; *Reedon*, 418 N.W.2d at 490-91.

Explained in a different way, Doe's argument leads to a futile "circuity of obligation." *See Graff*, 800 N.W.2d at 118 (describing "circuity of obligation" presented in settlement agreements involving indemnification and vicarious-liability claims). "A circuity of obligation is created when, by virtue of pre-existing indemnity agreements or obligations, the plaintiff is in effect obligated to indemnify the defendant for claims including the plaintiff's own claim." *Id.* (quotation omitted). "In effect, the plaintiff would have to pay his own damages because the employer's payment to the plaintiff would be indemnified by the employee, who in turn would be indemnified by the plaintiff." *Id.* To

avoid this "circuity of obligation," the supreme court has "held that a settlement agreement that releases the agent also releases the principal" from a vicarious-liability claim. *Id.*

That is exactly the situation presented here. If West End was found liable based on Doe's vicarious-liability claim for Meany's tortious conduct, West End could sue Meany for indemnity to pay any such award. The release signed by Doe requires Doe to defend and indemnify Meany from such claims, meaning that Doe would be required to pay West End for any damage award that West End was required to pay to Doe. The result would be an impermissible circuity of obligation.

We thus conclude that the *Pierringer* release bars Doe's vicarious-liability claim under the theories of both actual and apparent authority.

## II. Doe failed to demonstrate the existence of a genuine issue of material fact on an essential element of her claim for negligent retention against West End.

We turn next to Doe's arguments concerning the dismissal of her negligent-retention claim. A negligent-retention claim is based on the premise that employers have a duty "to refrain from retaining employees with known dangerous proclivities."[2] *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn. App. 1993) (referencing *Dean v. St. Paul Union Depot Co.*, 43 N.W. 54, 55 (Minn. 1889)), *rev. denied* (Minn. Apr. 20, 1993). The employer has a duty only if such dangerous proclivities are foreseeable. *See id.* at 422. Foreseeable dangers are those that should have been discovered by "reasonable investigation." *Id.*; *see also Doe 175 v. Columbia Heights Sch. Dist., ISD No. 13*, 873

---

[2] For the purposes of this analysis, we assume, without deciding, that a claim of negligent retention could be brought against West End, regardless of whether Meany was an independent contractor or employee of West End.

9

N.W.2d 352, 361-62 (Minn. App. 2016) (affirming dismissal of appellant's claims because abuse was not foreseeable); *Doe YZ v. Shattuck-St. Mary's Sch.*, 214 F. Supp. 3d 763, 786 (D. Minn. 2016) (persuasively discussing foreseeability in a negligent-retention case involving sexual abuse). An employer is thus liable for the tort of negligent retention when "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Yunker*, 496 N.W.2d at 423 (quotation omitted).

Thus, to avoid summary judgment, Doe needed to produce evidence that West End knew or should have known Meany had dangerous proclivities. But as the district court ruled, Doe failed to produce evidence that West End had either actual knowledge, or was on notice of, Meany's alleged dangerous proclivities such that it should have known of such a danger.

The record supports the district court's determination. Olseth testified that the first time she learned of Meany's conduct was when a report was filed against him with the medical board. She further testified that, before entering into the contract with Meany, she spoke with a psychologist who shared patients with Meany at his prior clinic and that the psychologist spoke highly of Meany and shared no complaints or concerns. Olseth also checked to determine if any complaints had been filed against Meany with the medical board; there were none. And no complaints or concerns about Meany's conduct were communicated to Olseth or anyone else at West End after Meany started seeing patients at the clinic. *See, e.g., K.L. v. Riverside Med. Ctr.*, 524 N.W.2d 300, 302 (Minn. App. 1994)

10

(stating, in the context of examining a hospital's duty to prevent sexual assault of a third party, that "[a]cts such as . . . sexual assault . . . will rarely be deemed foreseeable in the absence of prior similar incidents"), *rev. denied* (Minn. Feb. 3, 1995).

Moreover, Doe herself admitted that she never communicated any concerns about Meany to any staff at West End or made any complaints about him through West End's confidential online complaint form. And Doe presented no evidence that any improper conduct by Meany occurred where it could have been witnessed by any of West End's staff.

Doe argues, however, that West End should have known of Meany's dangerous proclivities because Olseth acknowledged that she was aware of the risk of "transference." Doe describes transference in her brief as occurring when "psychiatrists and psychologists develop[] feelings for patients." But Doe offers no support for her argument that a general knowledge of the risk that transference *can* occur between a patient and a therapist means that West End should have known that Meany had dangerous proclivities. *See Doe 175*, 873 N.W.2d at 360 ("In determining whether a danger is foreseeable, courts look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." (quotation omitted)); *L.M. ex rel. S.M. v. Karlson*, 646 N.W.2d 537, 541, 545 (Minn. App. 2002) (concluding appellant failed to show daycare should have been aware of sexual abuse by teacher based on general complaints about the teacher's qualification and [inappropriate] language), *rev. denied* (Minn. Aug. 20, 2002).

11

We thus reject Doe's argument and conclude that Doe failed to present evidence sufficient to create a genuine issue of material fact as to whether West End knew or should have known of Meany's dangerous proclivities.[3]

**Affirmed.**

---

[3] West End maintains that, in addition to the district court's reasoning, the dismissal of Doe's claim was proper "because Minnesota law does not recognize claims for direct corporate negligence against healthcare providers." Doe disagrees and cites as her authority the supreme court's decision in *Popovich v. Allina Health System*, 946 N.W.2d 885, 888 (Minn. 2020), which held that a hospital could be vicariously liable on a theory of apparent authority under certain circumstances for the professional negligence of a physician who is an independent contractor of the hospital. But we need not decide whether Minnesota recognizes such a cause of action because we agree with the district court that Doe failed to produce any evidence to support that West End knew or should have known of Meany's dangerous proclivities.