[Civ. No. 11084.  Third Dist.  Mar. 24, 1966.]

EUGENE A. CLINE, Plaintiff and Appellant, v. T. G. ATWOOD, as Executor, etc., et al., Defendants and Respondents.

Richard E. Crow, Anthony J. Barrett, Thomas F. Lytle and Crow, Phillips, Clements & Lytle for Plaintiff and Appellant.

McLaughlin, Russell, McCarthy & Kaelin, Hughes, Maul, Fogerty & Dezzani and Bronson, Bronson & McKinnon for Defendants and Respondents.

WHITE, J. pro tem.*—Plaintiff appeals from the judgment for defendants and from the order made thereafter denying his motion for judgment notwithstanding the verdict[1] in this action, tried before a jury. Appellant contends that the material facts are undisputed and thus he was entitled to have granted his motion for a directed verdict, which motion had been made and denied.

Appellant's action was brought against Ted C. Atwood, an insurance agent, who died thereafter. His executors have been substituted (with due stipulations concerning the presentation of a claim and the denial thereof) and herein we shall refer to the defendants' testator as respondent.

Respondent was a licensed insurance agent representing over 30 insurance companies. He was known to appellant's father for whom he had written a family homeowner's insurance policy previously.

Appellant was 21 years of age, unmarried, residing with his parents at Lake Tahoe, California, and employed by Harrah's Club at Stateline, Nevada. He was the owner of a Buick automobile, and his parents held registered title to three other automobiles.

On August 22, 1960, respondent called at the home of appellant's parents, pursuant to appointment, to discuss the writing of automobile insurance for the four automobiles. Appellant was not present, but it clearly appears that his father was acting as his agent in these negotiations. Upon the conclusion of the discussion respondent undertook to provide a policy of automobile liability insurance for the four vehicles, including appellant's Buick.

Appellant's parents both testified that respondent assured them, as he departed from their home, that the insurance coverage was effective at that time, but that at no time was any mention made of the identity of the company for whom respondent was acting as agent, thus leaving respondent free to select his principal from the numerous insurance companies represented by him. (Obviously, the intervening death of Atwood precluded any opportunity respondent would have to

---

*Assigned by the Chairman of the Judicial Council.

[1]During the trial defendant stipulated to the amount to which plaintiff would be entitled in the event of plaintiff's recovery, thus there was no ultimate factual issue other than liability.

An appeal properly may be taken from an order denying a motion for judgment notwithstanding a verdict. *Taylor* v. *Hawkinson,* 47 Cal.2d 893 [306 P.2d 797]; Code Civ. Proc., § 963.)

refute this testimony. For our purposes, however, we assume the jury accepted it as true.)

Respondent's offices were at Placerville, California, approximately 50 miles distant from Lake Tahoe where he had conferred with appellant's parents. The records from respondent's files and the testimony of his office manager establish that upon his return to his office respondent confirmed an "oral binder" covering all four vehicles with the Fidelity and Casualty Company of New York, effective as of August 22, 1960, as he was authorized to do.

On October 6, 1960, the insurance company issued its written policy of insurance and mailed it to appellant's father. This policy covered only the three vehicles registered to the parents, excluding appellant's Buick, and was written effective as of August 22, 1960, with the premium for one year calculated from that date. At the same time the insurance company advised respondent by letter that it was declining to insure appellant. A copy of appellant's motor vehicle record was attached, revealing several material incidents which had not appeared in the history of appellant's driving record contained in the application for insurance obtained from appellant's father.

On or about the 12th of October 1960, respondent called personally on appellant's father at Lake Tahoe and furnished him with a form of application to be completed by appellant. This form clearly indicated on its face that it was an application for insurance under the "California Assigned Risk Plan." Appellant's father testified that at the time of delivery of this form of application, Atwood stated he was having "a little problem" getting appellant's insurance.

Approximately two weeks later, respondent's office followed up with the matter by forwarding a duplicate application form to appellant. On this form various information was inserted at respondent's office to assist the applicant and expedite the application. Included therein were statements in response to questions to the effect that appellant had no insurance for three years, that he had been refused automobile liability insurance within the last 60 days, and to the question of "Name of present carrier, if any?" the reply was "None."

Appellant testified that he was about to be married late in October 1960, and that he delayed the completion of the application form for two or three weeks because he was getting ready to get married and figured that his premium would be

lower being a married man and he could add his wife on the policy without having a rider.

Appellant did marry on October 29, 1960, and thereafter with the aid of his wife he completed the first form of application for assigned risk insurance, using in part the information (including that hereinabove related) contained in the second form of application, which application he signed and mailed to respondent on the morning of November 3, 1960, prior to his departure on a trip to Oklahoma City. The application was received by respondent the following day, November 4, 1960. Assigned risk insurance coverage was not obtained until sometime thereafter.

In the meantime, on the afternoon of November 3, 1960, appellant was involved in a major automobile accident as a result of which suits were filed against him resulting in judgments aggregating $21,023.20, with incidental legal fees agreed to at the sum of $500, recovery of which appellant seeks here.

The complaint alleged three causes of action: fraud, negligence and oral contract of insurance. The first two were dismissed voluntarily, and appellant relies here only upon the theory that respondent obligated himself as an insurer, acting as agent for a partially disclosed principal. Significantly, no theory is advanced that there was any breach of an obligation to procure insurance coverage.

Appellant recognizes the rule that a verdict may be directed in favor of a party having the burden of proof only in the exceptional case in which there is no dispute in the evidence and there is but one inference which may be drawn from the evidence. ■ In a jury trial the trial court can decide a factual matter as a matter of law only when the facts are uncontroverted and where reasonable minds can draw but one legitimate inference therefrom. (*Ferner* v. *Casalegno*, 141 Cal. App.2d 467 [297 P.2d 91].)

■ As we view the evidence, the conclusion is inescapable that on August 22, 1960, respondent sold automobile insurance, effective forthwith, covering the four automobiles in the Cline family, including appellant's vehicle. (*Parlier Fruit Co.* v. *Fireman's Fund Ins. Co.*, 151 Cal.App.2d 6 [311 P.2d 62].) The fact that the contract was oral does not affect its validity. (*Kazanteno* v. *California-Western States Life Ins. Co.*, 137 Cal.App.2d 361 [290 P.2d 332]; *Parlier Fruit Co.* v. *Fireman's Fund Ins. Co., supra.*)

Appellant concedes that respondent did not intend to assume the role of an insurer but urges that because the evidence shows without conflict that respondent did not reveal to appellant (and his family) the identity of his principal, the conclusion follows that respondent is imposed by law with the obligation of an agent for a partially disclosed principal.

At the outset of discussing this contention, we observe that if Atwood stated to the Clines that the automobile insurance was to be provided by Fidelity and Casualty, no liability could be asserted against respondent under the pleadings here. Where an agent negotiates a contract for a disclosed principal, the agent is not personally liable on the contract without an express assumption of liability thereunder. No liability of respondent was contracted for here. We might affirm on this theory alone for the jury might have inferred that Atwood had revealed the identity of his principal when he informed the Clines they were covered. We prefer to discuss appellant's contentions further, however, on the premise that respondent was clearly shown by unimpeached testimony of appellant's parents to have not revealed the identity of his principal.

The Restatement Second of the Law of Agency, section 321, page 70, states the rule of liability of an agent for a partially disclosed principal: "Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract." The Restatement (at p. 70) comments that a principal is a partially disclosed principal when at the time of making the contract in question, the other party thereto has notice that the agent is acting for a principal but has no notice of the principal's identity; that the inference of an understanding that the agent is a party to the contract exists unless the agent gives such complete information concerning his principal's identity that he can be readily distinguished; that if the other party has no reasonable means of ascertaining the principal, the inference is almost irresistible and prevails in the absence of an express agreement to the contrary.

This rule has been approved in California (see 2 Cal.Jur.2d, Agency, § 170, p. 869) in cases where it appeared that the agent had contracted for a personal liability. As pointed out by 2 Williston on Contracts (3d ed.) section 282, page 325: "The inference that a contract with the purported agent was intended is the basis of a presumption that the so-called agent is bound in such a case. This statement, however, is probably too comprehensive. If circumstances make it clear that

the parties, with an understanding of the facts, had no intention that the agent should be liable, he will not be." It is there asserted that the true liability of the agent, according to the weight of authority, is "not on the contract but on an implied warranty of his authority." (Williston, *supra*, p. 327.)

Section 2343 of our Civil Code provides clearly that one who assumes to act as an agent is responsible to third persons as a principal for acts in the course of his agency, *only* in those situations where credit is given to him personally in a transaction, when he enters into a written contract in the name of his principal without believing in good faith that he has authority to do so, or when his acts are wrongful in their nature, *and in no other cases.*

Here it cannot be said as a matter of law that respondent acted wrongfully. He did provide immediate coverage for the Cline family, including appellant. The fact that such coverage ultimately was cancelled as to appellant cannot be said as a matter of law to obligate respondent as a principal, for the jury impliedly found that none of the parties ever intended that he be so obligated.

In seeking to avoid the consequences of the purported cancellation of the confirmed "oral binder," appellant urges that formal written notice thereof was not given to appellant. If respondent was not an insurer, as the jury concluded, then he was not obligated to give such notice.

Appellant's own testimony reflects that in October 1960 he knew that he was then uninsured and that he preferred to remain uninsured to save some premium and to include his bride as an insured after their wedding. The jury's implied finding that appellant was not insured by respondent is supported by the evidence.

Appellant's contention of error in the receipt into evidence of the application for assigned risk insurance is not well founded. The writing, bearing appellant's signature, was properly received as an admission against interest and for purposes of impeachment.

The judgment and the order thus should be and the same are affirmed.

Pierce, P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 18, 1966.