Curtis R. GRAFF, Respondent,

v.

**ROBERT M. SWENDRA AGENCY, INC., Appellant.**

No. A09–0173.

Supreme Court of Minnesota.

July 13, 2011.

Mark R. Anfinson, Minneapolis, MN, and Martin T. Montilino, The Law Office of Martin T. Montilino, Minneapolis, MN, for respondent.

Terrence M. Gherty, Gherty and Gherty, S.C., Hudson, WI, for appellant.

## OPINION

PAGE, Justice.

This case arises out of a lawsuit commenced by respondent Curtis Graff against his automobile insurer, American Family Insurance Group (American Family), for breach of contract, and against appellant Robert M. Swendra Agency, Inc. (Swendra Agency), for negligent failure to procure $1 million in underinsured motorist (UIM) coverage under an umbrella policy. The insurance policy at issue was sold to Graff by Robert M. Swendra (Robert Swendra), a licensed insurance agent and employee of the Swendra Agency. After Graff entered into a settlement agreement with American Family, Graff's contract claim against American Family was dismissed, and the negligence claim against the Swendra Agency proceeded to trial, despite the Swendra Agency's argument that the release of American Family released Graff's claim against the Swendra Agency. The jury found the Swendra Agency liable and awarded damages of $753,000. Pursuant to Minn.Stat. § 548.251 (2010), the collateral source statute, the district court reduced the damages award by a total of $200,260, which included the proceeds from two workers' compensation settlements, but did not include the attorney fees paid by Graff in obtaining those workers' compensation settlements. The court of appeals affirmed the district court's decisions. In doing so, it rejected the Swendra Agency's claims that its liability was extinguished by the release of American Family and that the district court improperly calculated the collateral source offset. We affirm.

The relevant facts are as follows. In February 2004, Graff met with Robert Swendra, an insurance agent selling American Family products, to discuss the purchase of automobile insurance. Graff alleges that at that meeting, Robert Swendra advised him to purchase an automobile policy with $100,000 in UIM coverage and an umbrella policy that included an additional $1 million in UIM coverage.[1] Graff subsequently purchased an automobile policy and an umbrella policy. Based on Robert Swendra's representations, Graff believed the umbrella policy contained $1 million in UIM coverage. In actuality, the umbrella policy did not provide any additional UIM coverage because Robert Swendra had not arranged for the necessary endorsement that would have provided the additional UIM coverage.

In August 2004, Graff, while on duty as a police officer, injured his back in a car accident with an underinsured motorist. As a result of this injury, Graff had three surgeries and underwent physical therapy. Despite these treatments, Graff was given a permanent lifting restriction of 25 to 30 pounds that effectively put an end to his career as a police officer. Graff did not learn that his umbrella policy did not contain the additional $1 million in UIM coverage until sometime in 2005 after his second surgery. In February 2007, Graff filed a complaint that, when read as a whole, alleged breach of contract against American Family and negligent procure-

---

1. Although Robert Swendra denied making any kind of recommendation as to what insurance policy Graff should or should not pur-chase at trial, the Swendra Agency concedes for purposes of this appeal that Robert Swendra did make such representations.

ment of insurance coverage against the Swendra Agency.[2]

■ On February 14, 2008, Graff entered into a *Pierringer* release [3] with American Family that, in consideration of $100,000, released American Family "from any and all claims" related to Graff's August 2004 injury. The release also stated that Graff would indemnify American Family "for any claims for medical bills, hospital liens, Medicare and Medicaid liens, or any other liens ... held by any other party claiming a right to reimbursement" and that the release was to have no effect on Graff's claims against the Swendra Agency. American Family was subsequently dismissed from the case.

Upon learning of the release, the Swendra Agency sought to have Graff's negligence claim against it dismissed, arguing that the release of American Family also released the Swendra Agency; or, in the alternative, that Graff's claim failed because of circular indemnity. The district

court declined to dismiss Graff's lawsuit and the negligence claim proceeded to trial.

At trial, the parties stipulated that Robert Swendra was acting within the scope of the Swendra Agency's agreement with American Family at the time of his transactions with Graff. After the close of evidence, the Swendra Agency moved for a directed verdict, which was denied except with respect to the possible effect of American Family's release on Graff's claim against the Swendra Agency. That question was taken under advisement.

The jury returned a verdict finding both the Swendra Agency and American Family negligent—attributing 90% of the fault to the Swendra Agency and the remaining 10% to American Family—and awarded damages of $753,000. The district court ordered a reduction of $200,260 to that amount as a collateral source offset for proceeds Graff received from his settlements with the underinsured driver and

2. The complaint in this matter lists Robert M. Swendra Agency, Inc., and American Family Insurance Group as defendants. Filings subsequent to the dismissal of American Family show Robert M. Swendra Agency, Inc., as the defendant. In its opinion, the court of appeals indicates that "Graff sued both the Swendra Agency and Robert Swendra as an individual." *Graff v. Robert M. Swendra Agency, Inc.*, 776 N.W.2d 744, 747 n. 1 (Minn. App.2009). After a careful review of the record before us, we have found nothing to suggest that Graff sued Robert Swendra as an individual.

3. *See Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106, 108 (1963) (approving plaintiff's right to maintain cause of action against remaining defendants when one joint tortfeasor has been released). We approved the use of a *Pierringer* release in *Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn.1978). The basic elements of a *Pierringer* release are:
   (1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' caus-

al negligence; (2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) the plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the nonsettling parties and to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released.
*Id.* at 920 n. 1.
   In this case, the parties describe the settlement agreement between Graff and American Family as a *Pierringer* release. We question this description, however, because the settlement agreement appears to exclude Graff's promise to indemnify American Family from any claims of contribution made by the Swendra Agency and to satisfy any judgment obtained from the Swendra Agency to the extent that American Family has been released. Nevertheless, we acknowledge that the parties do not dispute that the settlement agreement is a *Pierringer* release and that, for purposes of the jury verdict, the trial court treated the settlement agreement as a *Pierringer* release.

American Family, and portions of two workers' compensation settlements. In calculating that offset, the court excluded the attorney fees incurred by Graff in obtaining the workers' compensation settlements.

The Swendra Agency moved for judgment as a matter of law, which the district court denied based on a finding that there was competent evidence reasonably tending to support the jury's verdict that the Swendra Agency was negligent. The district court further concluded that neither the release of American Family nor the parties' stipulation at trial that Robert Swendra was acting within the scope of the Swendra Agency's agreement with American Family impacted the jury's verdict in a way that entitled the Swendra Agency to judgment as a matter of law.

The court of appeals affirmed. *Graff v. Robert M. Swendra Agency, Inc.*, 776 N.W.2d 744, 747 (Minn.App.2009). In doing so, the court of appeals rejected the Swendra Agency's argument that Graff's release of American Family extinguished Graff's claim against the Swendra Agency and held that the Swendra Agency was not entitled to indemnity from American Family. *Id.* at 750, 752. The court of appeals also held that the district court properly calculated the collateral source offset. *Id.* at 754–55. We affirm.

## I.

■ The Swendra Agency challenges the court of appeals' holding that Graff's settlement with and release of American Family did not extinguish Graff's claim against the Swendra Agency. More specifically, the Swendra Agency argues that it cannot be held individually liable because an insurance company is liable for its agent's representations when the agent binds coverage and, therefore, the release of the insurance company releases the

agent. In the alternative, the Swendra Agency argues that the release of American Family releases the Swendra Agency due to circular indemnity. The construction and effect of a settlement agreement is governed by the rules of contract construction and presents a question of law, which we review de novo. *Booth v. Gades*, 788 N.W.2d 701, 705 (Minn.2010) (citing *Karnes v. Quality Pork Processors*, 532 N.W.2d 560, 562 (Minn.1995); *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979)).

■ We first consider whether negligent procurement of insurance coverage is a recognized cause of action in Minnesota. Generally, a claim alleging negligent procurement of insurance coverage requires the insured to prove: (1) that the agent owed a duty to the insured to exercise reasonable skill, care, and diligence in procuring insurance; (2) a breach of that duty; and (3) a loss sustained by the insured that was caused by the agent's breach of duty. 10 Am.Jur. Proof of Facts 3d § 3, at 579 (1990); *see, e.g., Kanellis v. Pac. Indem. Co.*, 917 So.2d 149, 155 (Ala. Civ.App.2005); *Busey Truck Equip., Inc. v. Am. Family Mut. Ins. Co.*, 299 S.W.3d 735, 738 (Mo.Ct.App.2009); *Robson v. Quentin E. Cadd Agency*, 179 Ohio App.3d 298, 901 N.E.2d 835, 840–41 (2008). Although we have not explicitly recognized an action for negligent procurement of insurance coverage, we have held that "[a]n insurance agent has the duty to exercise the standard of skill and care that a reasonably prudent person engaged in the insurance business will use under similar circumstances." *Johnson v. Farmers & Merchs. State Bank of Balaton*, 320 N.W.2d 892, 898 (Minn.1982). *Johnson* involved a claim that an insurance agent negligently failed to deliver the insured's "line of credit" insurance policy—specifically, the certificate of insurance and appli-

cation for the policy—as required by Minn. Stat. § 62B.06 (2010). 320 N.W.2d at 897. We held that, while the failure to deliver the policy violated the statute, it did not amount to negligence because "[i]n the absence of a contractual undertaking by the agent or broker to provide insurance, the agent or broker has no legal duty toward an insured beyond that specifically undertaken by him or her." *Id.* at 898. Accordingly, on the facts presented, we concluded that the agent had provided what he had specifically undertaken to provide and therefore was not negligent. *Id.* Implicit in our decision in *Johnson* is the notion that an insurance agent may be held independently liable for negligent procurement of insurance coverage, *see id.*, and we now so hold explicitly.[4]

*A.   Bound Coverage*

■■■■ We now apply that holding to this case. Here, the jury found the Swendra Agency negligent because Graff's umbrella policy did not include the $1 million in UIM coverage Graff believed he had purchased. Notwithstanding the jury's finding of negligence, the Swendra Agency

contends that it cannot be held liable for negligent procurement because the release of American Family also released the Swendra Agency from liability. The Swendra Agency argues that an agent cannot be held directly liable for failure to procure insurance when the agent, acting within the scope of the agent's authority, binds coverage by the agent's representations. The issue of bound coverage arises in claims in which an insured seeks coverage that is denied by the insurer. *See generally Morrison v. Swenson*, 274 Minn. 127, 137–38, 142 N.W.2d 640, 646–47 (1966) (concluding that plaintiff's ability to demonstrate that insurer was bound entitled plaintiff to recover all expenses caused by the insurer's breach of contract). An agent's representations bind the insurer if the agent has actual, implied, or apparent authority to make such representations. *Id.* at 135, 142 N.W.2d at 645. The Swendra Agency argues that in this case, Robert Swendra, as an agent of American Family, bound American Family to provide UIM coverage through his representations to Graff. Therefore, the Swendra Agency argues that American Family was contrac-

4. The dissent argues that our recognition of a cause of action for negligent procurement of insurance coverage "is contrary to our existing precedent." The dissent is mistaken. Our recognition of a cause of action for negligent procurement is consistent with the well-established, common-law rule that an agent is subject to liability for harm caused by the agent's negligence. *See* Restatement (Third) of Agency § 7.01 & cmt. b (2006) (stating that an agent generally "is subject to liability to a third party harmed by the agent's tortious conduct," even when the agent's conduct may also subject the principal to liability); *see, e.g., Johnson v. Urie*, 405 N.W.2d 887, 889 (Minn. 1987) (noting that "we have previously recognized that under certain circumstances an insurance agent may be liable in negligence" for failure to use reasonable care); *Melady v. S. St. Paul Live Stock Exch.*, 142 Minn. 194, 198, 171 N.W. 806, 807 (1919) (explaining that agents are liable for their own active

wrongs). The dissent relies on our decision in *Paull v. Columbian National Fire Insurance Co.*, 171 Minn. 118, 120–21, 213 N.W. 539, 541 (1927), but that case simply stands for the proposition that an agent who makes a contract on behalf of his principal is not subject to liability under the contract. *See also* Restatement (Third) of Agency § 6.01 (2006) (stating that when an agent makes a contract on behalf of a disclosed principal, the agent generally is not a party to the contract). Further, our decision in *Eddy v. Republic National Life Insurance Co.*, 290 N.W.2d 174, 176–77 (Minn.1980), addressed the effect of a settlement by an insurance company—vicariously liable for the torts of an agent—on the agent's liability for negligence and did not in any way suggest that an agent cannot be directly liable to an insured for negligence. In short, there is nothing in our case law that insulates insurance agents from liability for their own negligence.

tually obligated to pay Graff's claim and that any harm to Graff resulted from Graff's decision to release American Family, not from the acts of the Swendra Agency.

We disagree. A plaintiff has the right to control his own lawsuit and to bring his claims against whomever he chooses. *See Hart v. Cessna Aircraft Co.,* 276 N.W.2d 166, 169 (Minn.1979). In this case, although part of the same lawsuit, Graff brought separate claims against American Family and the Swendra Agency. Specifically, Graff brought a breach-of-contract claim against American Family, seeking the proceeds from the insurance coverage he believed he had purchased, and a negligence claim against the Swendra Agency, seeking damages for negligent procurement of insurance coverage. In that the two claims are separate and distinct, we fail to see how, in this case, Graff's settlement releasing American Family and dismissing the breach-of-contract claim against American Family would, by itself, preclude the ongoing viability of Graff's negligence claim against the Swendra Agency, particularly when Robert Swendra denied that he had made any representations to Graff about the UIM coverage in the umbrella policy. Thus, the Swendra Agency's bound coverage argument is unavailing.

## B.  Circuity of Obligation

The Swendra Agency also argues that the release of American Family releases the Swendra Agency because of circular indemnity, or what we have referred to as a "circuity of obligation." *See Booth,* 788 N.W.2d at 708. "A circuity of obligation is created when, by virtue of pre-existing indemnity agreements or obligations, the plaintiff is in effect obligated to indemnify the defendant for claims including the plaintiff's own claim." *Nat'l Hydro Sys. v. M.A. Mortenson Co.,* 529 N.W.2d 690, 693 (Minn.1995). For example, if the plaintiff enters into a settlement agreement releasing the primarily liable tortfeasor employee and agrees to indemnify the employee, but then successfully sues the employee's vicariously liable employer, a circuity of obligation will occur if the employer successfully sues the employee for indemnification. *Booth,* 788 N.W.2d at 708–09 (citing *Horejsi v. Anderson,* 353 N.W.2d 316, 319 (N.D.1984)). In effect, the plaintiff would have to pay his own damages because the employer's payment to the plaintiff would be indemnified by the employee, who in turn would be indemnified by the plaintiff. "In light of this circuity of obligation, which nullifies the effectiveness of the settlement agreement," we have held that a settlement agreement that releases the agent also releases the principal. *Id.* at 709; *see, e.g., Reedon of Faribault, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.,* 418 N.W.2d 488, 490 (Minn.1988).

In this case, the settlement between Graff and American Family involves what the parties describe as a *Pierringer* release containing a provision requiring Graff to indemnify American Family for any claims "held by any other party claiming a right to reimbursement." Based on that provision, the Swendra Agency contends that a circuity of obligation exists because, if Graff prevails on his claim against the Swendra Agency and the Swendra Agency proceeds on a claim for contribution or indemnity against American Family, then Graff would be obligated to indemnify American Family for any amounts recovered by the Swendra Agency from American Family.[5] Again, we disagree.

---

5. The parties do not appear to dispute that

American Family was vicariously liable for

The Swendra Agency's circuity-of-obligation claim fails for two separate, but very basic, reasons. First, a careful reading of the settlement agreement between Graff and American Family indicates that while the agreement contains a provision requiring Graff to indemnify American Family, that provision limits Graff's indemnity obligation to claims for medical bills and liens related to medical services.[6] On its face, the provision does not extend to indemnity or contribution claims that might be brought by the Swendra Agency against American Family.

Second, a vicariously liable principal is generally not required to indemnify the directly liable agent for his torts. *See Shair–A–Plane v. Harrison*, 291 Minn. 500, 503, 189 N.W.2d 25, 27 (1971) (concluding that without evidence of an express agreement to the contrary, a principal has no duty to indemnify an agent for losses due to the agent's fault). Thus, absent an indication that the principal is obligated to indemnify the agent for the agent's torts, the release of the principal will not result in a circuity of obligation. On the record presented here, there is nothing to suggest that American Family has any contractual obligation to indemnify the Swendra Agency for the Swendra Agency's negligence. Because the record establishes that Graff has no obligation to indemnify American Family for any indemnity or contribution claim that the Swendra Agency might have against American Family and because there is nothing in the record suggesting that

the negligent acts of the Swendra Agency under a principal-agent relationship. Under the principle of respondeat superior, an insurer may be held vicariously liable for the negligence of its agent. *See Eddy v. Republic Nat'l Life Ins. Co.*, 290 N.W.2d 174, 176 (Minn. 1980). In contrast, "[a] broker is independently liable to the insured in either contract or tort for failing to procure insurance as instructed." *Id.* at 177. In *Eddy*, we stated that "[t]he essence of the difference is that whereas an insurance agent acts on behalf of a particular insurance company, an insurance broker acts on behalf of the prospective insured." *Id.* at 176; *see also Morrison v. Swenson*, 274 Minn. 127, 135–36, 142 N.W.2d 640, 645–46 (1966) (setting forth criteria for making agent-broker distinction). This distinction, however, appears to have been superseded by statute. Under Minn.Stat. § 60K.49, subd. 1 (2010), "A person performing acts requiring a producer license under this chapter is at all times the agent of the insurer and not the insured." *See generally* 22 Britton D. Weimer, Clarance E. Hagglund & Andrew F. Whitman, *Minnesota Practice— Insurance Law and Practice* § 1:11 (2d ed.2010) (discussing the development of statutory agency under Minnesota law). Section 60K.49, subdivision 1, which was enacted in 2001, Act of May 17, 2001, ch. 117, art. 1, § 20, 2001 Minn. Laws 316, 332, replaced Minn.Stat. § 60K.15 (2000), which provided that "[a]ny person who solicits insurance is the agent of the insurer and not the agent of the insured."

Nevertheless, here, the parties stipulated at trial that Robert Swendra was acting within the scope of the Swendra Agency's agreement with American Family at the time of Robert Swendra's transactions with Graff. Therefore, we assume for purposes of this decision that Robert Swendra was an agent for American Family without applying or disregarding *Eddy*.

6. The provision in its entirety reads:

I further agree that all medical bills, hospital liens, Medicare and Medicaid liens or any other liens, including third-party providers or health insurance companies or workers' compensation carriers, held by any other party claiming a right to reimbursement have been paid, will be paid, or will be fully assumed by me. I agree to fully and completely indemnify, save and hold harmless American Family Insurance Group, its heirs, administrators, executors, successors, and assigns for any claims for medical bills, hospital liens, Medicare and Medicaid liens, or any other liens, including third party providers and health insurance companies or workers' compensation carriers, held by any other party claiming a right to reimbursement.

American Family has any obligation to indemnify the Swendra Agency for the Swendra Agency's torts, we conclude that a circuity of obligation is not present in this case. Thus, the Swendra Agency's circuity-of-obligation argument fails.

## II.

■ Minnesota's collateral source statute, Minn.Stat. § 548.251, allows a party who has been found liable for tort damages to file a motion requesting the court to reduce the amount of the plaintiff's award by amounts the plaintiff has already received from collateral sources. The collateral source statute partially abrogates the common law collateral source rule, which "allows an injured person to recover damages from a tortfeasor even when that award results in a double recovery." *Do v. Am. Family Mut. Ins. Co.*, 779 N.W.2d 853, 857–58 (Minn.2010) (citing *Hueper v. Goodrich*, 314 N.W.2d 828, 830 (Minn. 1982)). The primary purpose of the collateral source statute is "to prevent double recoveries by plaintiffs." *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 331 (Minn. 1990). Accordingly, we have held "that applying the statute when the injured plaintiff has been undercompensated 'is not justified.'" *Do*, 779 N.W.2d at 858 (quoting *Imlay*, 453 N.W.2d at 335).

The collateral source statute defines "collateral sources," in relevant part, as:

[P]ayments related to the injury or disability in question made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict, by or pursuant to:

(1) a federal, state, or local income disability or Workers' Compensation Act; or other public program providing medical expenses, disability payments, or similar benefits.

Minn.Stat. § 548.251, subd. 1(1). Procedurally, the collateral source statute "prevents double recovery through a post-trial reduction by the district court of a plaintiff's award." *Swanson v. Brewster*, 784 N.W.2d 264, 269 (Minn.2010); *see* Minn. Stat. § 548.251, subds. 2, 3.

■ In this case, the district court reduced the jury's award based on the settlements that Graff received, including portions of two workers' compensation settlements. Specifically, in calculating the collateral source offset, the court did not include attorney fees totaling $11,260, which were paid directly to Graff's counsel in connection with those workers' compensation settlements. Because attorney fees are not explicitly excluded under the collateral source statute, the Swendra Agency argues that the attorney fees should have been included in the calculation of the offset.

This argument requires us to determine, in the first instance, whether attorney fees, paid to the attorneys retained by Graff to provide legal services with respect to his claims for workers' compensation benefits, are payments related to Graff's "injury or disability" resulting from his August 2004 motor vehicle accident. If we answer that question in the affirmative, we must then determine whether the payments were made to Graff or on Graff's behalf. If we answer that first question in the negative, however, our inquiry ends because the fees would not qualify as a collateral source.

■ Statutory interpretation is a question of law subject to de novo review. *Johnson v. Murray*, 648 N.W.2d 664, 670 (Minn.2002). Because the collateral source statute abrogates the common law, we construe the statute narrowly. *See Do*, 779 N.W.2d at 858 (noting that "'statutes in derogation of the common law are to be strictly construed'" (quoting *Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 327 (Minn.2004))); *Kelly v. First Minneapolis Trust Co.*, 178 Minn. 215, 217, 226

N.W. 696, 696 (1929) (stating that we will not construe a statute "as altering the common law further than the language of the statute clearly and necessarily requires"). Further, our rules of statutory interpretation require us to construe statutes to avoid " 'unjust consequences.' " *Swanson*, 784 N.W.2d at 274 (quoting *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 278 (Minn.2000)).

When calculating a collateral source offset, the court may reduce an award "only by or pursuant to" the provisions listed in the statute. *Swanson*, 784 N.W.2d at 269–70. The collateral source statute defines "collateral sources" as *"payments related to the injury or disability in question* made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict." Minn.Stat. § 548.251, subd. 1 (emphasis added). We conclude that the attorney fees paid to Graff's counsel as part of the workers' compensation settlements do not constitute payments related to Graff's "injury or disability" resulting from the August 2004 motor vehicle accident.

Under the Workers' Compensation Act, attorney fees for the representation of an injured employee are governed by Minn. Stat. § 176.081 (2010). Section 176.081 requires the attorney representing the injured employee to enter into a signed retainer agreement with the employee and authorizes, with limited exceptions, the attorney to receive a contingent attorney fee award of 25% of the first $4,000 of compensation awarded and 20% of the next $60,000 awarded for the recovery of monetary, medical, and rehabilitation benefits. Minn.Stat. § 176.081, subd. 1(a). Thus, under the Act, attorney fees can only be paid for legal services with respect to a claim for benefits that results in a recovery of monetary, medical, or rehabilitation benefits. At the same time, an employee, such as Graff, can only be awarded workers' compensation benefits for injuries that arose out of or in the course of his employment. The mere fact that the attorney fees are related to Graff's claims for workers' compensation benefits based on his work-related injury and resulting disability does not mean that the attorney fees are related to Graff's "injury or disability" within the meaning of the term "collateral source." Unlike payments made for past and future pain, lost wages, the loss of future earning capacity, disability, and emotional distress, which flow directly and inextricably from a given injury or disability, payments made for attorney fees do not flow from the injury or disability at all. The attorney fees flow only from Graff's claim for compensation and therefore are not related to any given injury or disability.

Moreover, because the attorney fees were paid directly to Graff's counsel, there is no double recovery here. *See Imlay*, 453 N.W.2d at 335 (indicating that the Legislature did not intend for the collateral source statute to apply to reduce an award "where there is no possibility of a double recovery"). In addition, allowing the attorney fees to be included in the collateral source offset would leave Graff undercompensated for his injury because those fees were paid directly to his attorneys. *See Do*, 779 N.W.2d at 858 (stating that we will not apply the collateral source statute when it would leave the injured plaintiff undercompensated). Accordingly, we hold that the district court properly excluded the attorney fees paid to Graff's counsel from the collateral source calculation.

Affirmed.

DIETZEN, Justice (dissenting).

Today, the majority establishes a new cause of action for the negligent procurement of insurance coverage that may be brought by an insured person against an insurance agent. In doing so, the majority offers no legal basis for recognizing a new cause of action for negligent procurement. Because I conclude that the new cause of action established by the majority is contrary to our existing precedent, I respectfully dissent.

Previously, this court has concluded that the promises of an insurance agent are binding on the insurance company, and that an insurance agent has no liability for those promises of insurance coverage. Rather, the acts or conduct of an insurance agent bind the principal to the requested insurance coverage, and the insurance agent is not personally liable. *Paull v. Columbian Nat'l Fire Ins. Co.*, 171 Minn. 118, 120–21, 213 N.W. 539, 540–41 (1927). Put differently, a duly authorized agent binds the insurance company to the requested insurance, even if the agent was negligent. Because the principal is bound by the agent's actions, the insured is barred from holding the insurance agent personally liable. *Id.* at 121, 213 N.W. at 541; *see also* Restatement (Third) of Agency § 6.01 (2006). When an agent binds the coverage, "[t]he omission or mistake . . . did no harm to either plaintiff, for in law the company was bound as if proper entries had been made." *Paull*, 171 Minn. at 121–22, 213 N.W. at 541.

In *Eddy v. Republic National Life Insurance Co.*, this court considered whether the defendant was acting as an insurance broker and not an insurance agent, and

therefore could be held independently liable to the insured for negligence and misrepresentation. 290 N.W.2d 174, 176–77 (Minn.1980). We stated that "an insurance company is liable for the torts of its agents when they are acting within the scope of their employment." *Id.* at 176 (citing *Morrison v. Swenson*, 274 Minn. 127, 142 N.W.2d 640 (1966)). The key question, however, is "whether the person claimed to be an agent was, in fact, acting in that capacity." *Eddy*, 290 N.W.2d at 176. Specifically, an insurance agent acts on behalf of a particular insurance company, but an insurance broker acts on behalf of the prospective insured. *Id.* Thus, "[a] broker is independently liable to the insured in either contract or tort for failing to procure insurance as instructed, but an agent's liability may be affected by the settlement of his principal." *Id.* at 177 (citations omitted). We concluded that whether the defendant was an insurance agent or broker was a question of fact, and remanded for a trial on that issue. *Id.* at 176–77. Here, there is no question that Swendra acted as an insurance agent and not an insurance broker.

Based upon our decisions in *Paull* and *Eddy*, this court has declined to recognize the existence of a cause of action against an insurance agent for negligent procurement of insurance coverage. The underlying reasoning is that the insured's remedy to enforce the promises of insurance coverage by the insurance agent is against the insurance company on principles of agency. This principal is sound and has continuing validity today.[1]

The majority concludes that this court has previously recognized a cause of action

---

1. Other jurisdictions recognize that an insurance agent representing a disclosed principal insurance company cannot be held primarily liable for failing to procure the promised insurance. *See, e.g., Cline v. Atwood*, 241 Cal.

App.2d 108, 113, 50 Cal.Rptr. 233 (Cal.Ct. App.1966); *Marmor v. Bank of Louisville*, 262 S.W.2d 173, 173 (Ky.1953); *W. & S. Life Ins. Co. v. Vale*, 213 Ind. 601, 12 N.E.2d 350, 354 (1938).

against an insurance agent for negligent procurement of insurance coverage. The majority relies on *Johnson v. Farmers & Merchants State Bank of Balaton*, 320 N.W.2d 892 (Minn.1982), to support its determination.[2] *Supra* at 117 ("We now apply that holding to this case."). In my view, the majority's reliance on *Johnson* is misplaced. In *Johnson*, the narrow issue before this court was whether the evidence in the record supported the jury verdict. 320 N.W.2d at 896–99. In examining the evidence, we stated in dictum that the evidence supported the conclusion that the insurance agent procured the additional line of credit life insurance requested, and therefore did not support a jury verdict that the agent was negligent. *Id.* at 898. Importantly, we observed:

> Even if there were some duty on the part of the Agency to review the insurance coverage annually or periodically, here any failure of periodical review is clearly not the cause of any damages sustained by the respondent because Johnson, at all times, knew he had line of credit life insurance to the maximum amount of $40,000.

*Id.* Notably, this court did not recognize a new cause of action against an insurance agent for negligent procurement of insurance coverage. Had this court intended to recognize a new cause of action, it would have expressly stated that conclusion and given its reasons for its conclusion. Moreover, this court would have expressly stated the "compelling reason" for overturning, in whole or in part, this

court's decisions in *Paull* and *Eddy*. *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn.2000) (explaining that "we are extremely reluctant to overrule our previous cases" and will only do so for a "compelling reason"). Accordingly, I conclude that *Johnson* does not recognize a new cause of action for negligent procurement of insurance coverage.

Here, the parties stipulated that Swendra was acting within the scope of his agency agreement with American Family at the time he bound insurance coverage for Graff. This stipulation was made in lieu of submitting a special verdict question to the jury asking, "Was Robert Swendra Agency, Inc. acting in the scope of its agency agreement with American Family Insurance at the time of its negligence?" This stipulation is binding upon both parties at trial and on appeal. *Lappinen v. Union Ore Co.*, 224 Minn. 395, 407, 29 N.W.2d 8, 17 (1947). Because Swendra was acting as an agent of American Family at the time he sold the underinsured motorist (UIM) insurance to Graff, American Family, as the principal, was bound to provide the UIM insurance Swendra promised to Graff. *See Paull*, 171 Minn. at 120–21, 213 N.W. at 540–41. Consequently, American Family was bound to provide Graff with $1,000,000 in UIM coverage under an umbrella policy as promised by Swendra, and Graff's damage claim was limited to American Family's obligation to provide that coverage.

---

**2.** In footnote 4, the majority relies on general agency law to argue that its new cause of action is justified by existing law. But the majority misses the mark. Specifically, in the insurance context, this court has explicitly declined to recognize such a cause of action. *Paull*, 171 Minn. at 121–22, 213 N.W. at 541 (concluding that the insurance company is liable for the negligent omission or mistake of the agent to provide insurance coverage, "for

in law the company was bound as if proper entries had been made"); *Eddy*, 290 N.W.2d at 176 (concluding that "an insurance company is liable for the torts of its agents when they are acting within the scope of their employment"). Rather, the insured's remedy for an agent's negligent failure to procure insurance coverage is to enforce the promise of insurance coverage against the insurance company, not the insurance agent.

Accordingly, I would conclude that Graff does not have a cause of action against Swendra, and therefore his claim against the Swendra Agency should be dismissed. Consequently, I respectfully dissent.

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Dietzen.

STRAS, Justice (concurring in part, dissenting in part).

I join all but Part II of the court's opinion. I would hold that the attorney fees paid to Graff's attorney as a result of the settlement of Graff's two workers' compensation claims are collateral source payments under Minn.Stat. § 548.251 (2010). The record in this case reveals that on May 18, 2006, Graff settled with his employer[1] for a $14,040 lump sum payment to Graff and a payment of $3,760 to Graff's attorney under Minn.Stat. § 176.081 (2010), a provision governing the award of attorney fees in workers' compensation cases. A subsequent December 13, 2006, settlement directed a $60,000 lump sum payment to Graff and a payment of $7,500 to Graff's attorney. The court today concludes that the $11,260 in payments to Graff's attorney are not "collateral sources" under Minn.Stat. § 548.251. I disagree.

"Collateral sources" are defined as "payments related to the injury or disability in question made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict, by or pursuant to," among other sources, the Workers' Compensation Act. Minn.Stat. § 548.251, subd. 1. Therefore, to qualify as a collateral source, a payment must (1) be made pursuant to or by one of the sources listed in section 548.251, subdivision 1(1)–(4); (2) be "related to the injury or disability in question"; and (3) be "made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict." Minn.Stat. § 548.251, subd. 1. In my view, the payments to Graff's attorney are "collateral sources" because the payments satisfy all three statutory requirements in section 548.251.

The first requirement is not at issue because neither party disputes that Graff's employer paid the $11,260 in fees to Graff's attorney "pursuant to" the Workers' Compensation Act, a source of payment listed in section 548.251, subdivision 1. Nor do the parties dispute that the same injury forms the basis for Graff's two settled workers' compensation claims and the present action against Swendra Agency and American Family: the back injury Graff suffered in an August 2004 car accident. At issue in this case are the application of the second and third requirements of the statute—whether the payments to Graff's attorney relate to the back injury suffered by Graff, and if so, whether the payments were "made to [Graff], or on [Graff's] behalf up to the date of verdict." *See* Minn.Stat. § 548.251, subd. 1.

In the court's view, attorney fees can be recovered under the Workers' Compensation Act only "with respect to a claim for benefits that results in a recovery of monetary, medical, or rehabilitation benefits for the employee." And unlike payments for "past and future pain, lost wages, the loss of future earning capacity, disability, and emotional distress, which flow directly and inextricably from a given injury or disability, payments made for attorney fees do not flow from the injury or disability at all."

---

1. Graff's employer, the City of Richfield, paid Graff's workers' compensation benefits pursuant to two stipulations of settlement that also involved the employer's claims administrator, Berkley Risk Administrators Company, LLC. For simplicity and clarity, I will refer to Graff's employer and Berkley Risk Administrators collectively as the "employer."

The flaw in the court's analysis, however, is that the collateral source statute does not require a payment to "flow directly and inextricably" from an injury or disability; rather, the second requirement under the statute is that a payment must be "related to" an injury or disability. To reach its conclusion that the attorney fees in this case are not collateral sources, the court alters the plain meaning of section 548.251 by creating its own novel definition of the phrase "related to" as meaning to "flow directly and inextricably from." The phrase "related to," however, requires only a relationship or "connect[ion] by reason of an established or discoverable relation." *Webster's Third New International Dictionary* 1916 (2002); *see also The American Heritage Dictionary of the English Language* 1473 (4th ed.2009) (defining "related" as "[b]eing connected; associated"). The court articulates the necessary "established or discoverable relation" in its own analysis. As the court states, the Workers' Compensation Act requires attorneys to enter into a signed retainer agreement with the injured employee pursuant to certain terms mandated by the Act. *See* Minn. Stat. § 176.081. Then, according to the Act, attorney fees are paid only when the employee recovers monetary, medical, or rehabilitation benefits as a result of an injury or disability arising out of and in the course of employment. Minn.Stat. § 176.081, subd. 1(a); *see also* Minn.Stat. § 176.021, subd. 1 (2010). In other words, but for the injury or disability suffered by the employee, there would be no attorney fees in a workers' compensation action.

Nonetheless, in holding that payments to Graff's attorney are not "collateral sources," the court relies on a false dichotomy between the "claim for compensation" in a workers' compensation action and the underlying injury or disability. The court's analysis cannot withstand scrutiny, however, because only an injury or disability can serve as the basis for a workers' compensation claim. An employee cannot bring a workers' compensation claim for wrongful termination, discrimination, or any of the other many grounds for bringing an action against an employer. *See* Minn.Stat. § 176.021, subd. 1 (stating that an employer is liable under the Workers' Compensation Act in all cases "of personal injury or death of an employee arising out of and in the course of employment"). Rather, the disability or injury and the claim for compensation in a workers' compensation action are, to use the words of the court, "directly and inextricably" linked.

Finally, I would conclude that the third requirement of section 548.251 has been met because Graff's employer made the payments to Graff's attorney on "[Graff's] behalf." When his claims settled, Graff owed his attorney a fixed percentage of the total amount recovered from the employer. Instead of the employer paying Graff, who would then pay his attorney, the stipulations permitted the employer to pay Graff's attorney directly. The payments made by the employer to Graff's attorney, though not made to Graff himself, were unquestionably for Graff's benefit, and the stipulations recognize this fact. Graff's December 13 stipulation with the employer, for example, characterizes the $67,500 award as a payment to Graff, and "[t]hat from said sum shall be withheld as attorney fees the amount of $7,500.00 representing allowable fees under Minn.Stat. § 176.081." Similarly, Graff's May 18 stipulation also treats the $17,800 as a payment to Graff, with $3,760 withheld to pay Graff's attorney.

Accordingly, I would conclude that the payments to Graff's attorney were made pursuant to the Workers' Compensation Act, were "related to [Graff's] injury or disability," and were made "on [Graff's]

behalf," which is all that is required for qualification as a collateral source under section 548.251.[2]

---

2. The court also concludes that it was proper to exclude the attorney fees in the collateral source calculation because the Legislature designed section 548.251 as a bar only to double recovery by a plaintiff. First, this court's characterization of the purpose of a statute cannot override the plain, ordinary meaning of a statute's text. Second, even if the court is correct that the statute's purpose is to prevent double recovery by a plaintiff, Graff is receiving a double recovery here. He is receiving the benefit of legal services in his workers' compensation action without having to pay for those services under a legally binding contingency fee agreement with his attorney. Nothing in section 548.251 indicates that plaintiffs in workers' compensation actions are entitled to the free services of an attorney when a full recovery is made by the plaintiff in another tort action. Yet that is precisely the result that the court endorses today.