# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-2757
_____

Joseph Wobig; Carrie Wobig

*Plaintiffs - Appellants*

v.

Safeco Insurance Company of Illinois

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 15, 2022
Filed: July 19, 2022
_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

This case is before us on an appeal from the district court's[1] grant of summary judgment in favor of Safeco Insurance Company of Illinois ("Safeco"). It involves a dispute over the applicability of an "other structure" exclusion in a homeowner's

_____

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

policy when the building sustaining damage was "used in whole or in part for business." At issue here is a loss caused by the failure of an in-floor radiant heat system in a pole barn that was occasionally used for business purposes. Because we conclude the business use exclusion for other structures precludes coverage for the loss, there is no evidence of bad faith on the part of Safeco, and Safeco had no duty to advise Joseph and Carrie Wobig ("the Wobigs") about coverage, we affirm.

## I.    BACKGROUND

In 2017, the Wobigs sought to switch insurance carriers for their residential property located in Zumbrota, Minnesota. On the premises are two structures: a main house and a pole barn. The pole barn houses a shop (which consists of a cold storage area and a heated garage) and an apartment formerly used by the Wobigs as their primary residence. An application was presented through an independent insurance broker, Freedom Insurance Agency. In the application, the Wobigs answered "no" to the question of whether there was a business on the premises. Safeco issued a homeowner's policy without a home business endorsement.

The homeowner's policy provided coverage for two types of buildings on the premises: (A) the Wobigs' dwelling used principally as their private residence, and (B) "other structures" on the property. Immediately after listing examples of covered structures, the policy set forth building property excluded from coverage ("the business use exclusion"):

> BUILDING PROPERTY **WE DO NOT COVER**
> **1.**    Land . . .
> **2.**    Other structures:
>     **a.**    used in whole or in part for *business;* or
>     **b.**    rented or held for rental . . .

The policy broadly defined "**business**" as meaning:

a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or any other activity, including civic or public, engaged in for money or other compensation, except for the following:

**(1)** One or more activities, not described in **(2)** below, for which no *insured* receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period; and

**(2)** *volunteer* activities for which no money or other compensation is received other than for expenses incurred to perform the activity.

On February 6, 2019, the Wobigs returned from a vacation to discover the shop's in-floor heating coils had frozen and cracked during a severe cold spell, causing an extensive loss. The Wobigs submitted a claim to Safeco, asserting the entire shop floor needed to be replaced. Within days, Safeco concluded that the claim would likely involve concrete removal and assigned an adjustor. On February 13, 2019, Don Ludzack inspected the property, photographed most of the pole barn except for the cold storage area, and determined the loss would be substantial. About two weeks later, Safeco field claims resolution specialist, Timothy Webb, asked Joseph Wobig about the use of the shop. Wobig responded that he rebuilt cars and is a contractor (Joseph Wobig is the sole owner of Wobig Construction, LLC). Suspecting that the business use exclusion might apply, Safeco issued a reservation of rights letter and informed the Wobigs that the company was still investigating the claim.

Safeco reassigned the claim to its Special Investigation Unit ("SIU"), and Geoffrey Johnson, an appraiser with the Large Loss Unit, was assigned to the claim. On July 9, 2019, when Johnson visited the property, he observed a Wobig Construction employee go inside the cold storage area via an overhead door and remove tools. Upon entering the pole barn, Johnson discovered equipment and tools in the cold storage area. Johnson took photographs, revealing equipment—including

shovels, ladders, nail guns, chain saws, mortar bags, and Wobig Construction signs—being stored inside the cold storage area.

Safeco's SIU then conducted additional investigation and discovered Wobig Construction had claimed a business depreciation expense for the shop over a course of years, confirming that the property was being used, at least in part, for business purposes. The tax records showed depreciation expenses from 2014 through 2018, with the 2018 return being filed nearly contemporaneously with the loss. Following this discovery, the Wobigs' accountant informed Safeco that he intended to amend the 2018 tax return to remove the depreciation allowance. The amended return was filed in June 2020.

Safeco denied the claim on December 17, 2019, on the basis that Joseph Wobig used the shop for business purposes and that coverage was precluded by the business use exclusion for other structures. In January 2020, the Wobigs commenced an action against Safeco in state court, alleging breach of contract, negligence, and a breach of warranty of fitness for a particular purpose. After the case was removed to federal court, the Wobigs added a bad faith claim. The district court granted summary judgment in favor of Safeco on all claims. The Wobigs appeal.

## II.    ANALYSIS

We review the grant of summary judgment and the district court's interpretation of Minnesota insurance law *de novo*. Nat'l Union Fire Ins. Co. of Pittsburgh v. Donaldson Co., 926 F.3d 1014, 1020 (8th Cir. 2019); see Selective Ins. Co. of S.C. v. Sela, 11 F.4th 844, 847 (8th Cir. 2021) (same standard of review for interpretation of state law). We will affirm summary judgment if there is no genuine dispute of material fact, and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). We construe the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. Johnson v. Safeco Ins. Co. of Ill., 983 F.3d 323, 329 (8th Cir. 2020). Minnesota substantive

law controls our analysis in this diversity action. <u>C.S. McCrossan Inc. v. Fed. Ins. Co.</u>, 932 F.3d 1142, 1145 (8th Cir. 2019).

## A.  Policy Interpretation and Coverage

The Wobigs assert the policy provides coverage for their claimed loss because: (1) a common sense understanding of the business use exclusion requires actual business activity to take place on the property and there was no actual business being conducted on the property; (2) the policy provides limited coverage for business property located on the premises and the definition of premises includes "other structures;" and (3) enforcement of the exclusion violates their reasonable expectations.

Whether an insurance policy is ambiguous is a question of law that follows ordinary contract construction principles. <u>Carlson v. Allstate Ins. Co.</u>, 749 N.W.2d 41, 45 (Minn. 2008). Policy language is ambiguous if reasonably susceptible to more than one interpretation. <u>King's Cove Marina, LLC v. Lambert Com. Constr. LLC</u>, 958 N.W.2d 310, 316 (Minn. 2021) (quoting <u>Midwest Family Mut. Ins. Co. v. Wolters</u>, 831 N.W.2d 628, 640 (Minn. 2013)). In determining whether an insurance policy provides coverage, we first look at the policy language. <u>Depositors Ins. Co. v. Dollansky</u>, 919 N.W.2d 684, 691 (Minn. 2018). If the language is unambiguous and clear, courts effectuate the parties' intent by construing the language in its plain and ordinary sense. <u>Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.</u>, 825 N.W.2d 695, 704 (Minn. 2013). Under Minnesota law, only in "extremely narrow" circumstances will a court resort to the reasonable expectations doctrine, which "applies only to resolving ambiguity in policy terms and for correcting extreme situations, such as where a party's coverage is significantly different from what the party reasonably believes it has paid for and where the only notice the party has of that difference is an obscure and unexpected provision." <u>Bethel v. Darwin Select Ins. Co.</u>, 735 F.3d 1035, 1041 (8th Cir. 2013) (cleaned up).

Here, the homeowner's insurance policy unambiguously excludes coverage for loss occurring to an "other structure" used in whole or in part for a business that generates more than $3,000 in annual compensation during the prior year, regardless of whether the business is engaged in on a full-time, part-time, or occasional basis. Joseph Wobig's construction business is substantial, generating approximately $5 million in annual revenue. Wobig admitted that his employees used the tools from inside the shop for business purposes and that the shop stored Wobig Construction signs. Wobig Construction took both business loan expenses and depreciation tax deductions for the shop. A jury confronted with this information would necessarily have to find that, at the time of the loss, the shop was being used, at least in part, for a business.

The Wobigs' arguments seeking to engraft an additional requirement on the business use exclusion—that the structure be used for "actual business activity"— or that the limited coverage for business property located on the premises somehow changes or modifies the plain language of the business use exclusion are unavailing. Because the policy language is unambiguous and the exclusion is neither obscure nor unexpected, the reasonable expectations doctrine is inapplicable. See Bethel, 735 at 1041. Safeco did not breach the contract when it denied coverage.

## B. Bad Faith Denial

To make a bad faith claim, the insured must establish both that the insurer lacked a reasonable basis for denying the insurance benefits and that the insurer knew it lacked a reasonable basis for denying benefits or acted in reckless disregard of the lack of a reasonable basis. Peterson v. W. Nat'l Mut. Ins. Co., 946 N.W.2d 903, 909-10 (Minn. 2020) (citing Minn. Stat. § 604.18, subd. 2(a)). Having found the business use exclusion precludes coverage for the Wobigs' claim, it necessarily follows that the Wobigs have failed to establish the lack of a reasonable basis for the denial of insurance benefits. Nor is there any other evidence of bad faith in the investigation of this claim. We find no basis for a claim of bad faith on the facts or law of this case.

## C. Negligent Procurement of Insurance Coverage

The Wobigs also argue that the agent had a duty to know what the policy covered and determine appropriate coverage for all structures on their property. Setting aside the question of the agent's relationship with Safeco as an independent insurance broker, to establish a negligent procurement of insurance coverage claim against an agent, the insured must prove: (1) the agent owed a duty to exercise reasonable care, skill, and diligence under similar circumstances in procuring insurance; (2) a breach; and (3) the agent's breach caused the insured's damages. Graff v. Robert M. Swendra Agency, Inc., 800 N.W.2d 112, 116 (Minn. 2011) (citing 10 Am. Jur. 3d Proof of Facts § 3 (1990)). The question of whether a duty exists is a question of law for the court. Johnson v. Urie, 405 N.W.2d 887, 891 n.5 (Minn. 1987).

In the absence of "a contractual undertaking by the agent or broker to provide insurance, the agent or broker has no legal duty toward an insured beyond that specifically undertaken by him or her." Graff, 800 N.W.2d at 117 (quoting Johnson v. Farmers & Merch. State Bank of Balaton, 320 N.W.2d 892, 898 (Minn. 1982)). An insurance agent's ordinary duty is limited to following the client's instructions and acting in good faith. Scottsdale Ins. Co. v. Transp. Leasing/Cont., Inc., 671 N.W.2d 186, 196 (Minn. Ct. App. 2003). That said, if special circumstances are present regarding the transaction and the relationship between the agent and the client, the agent may have a common law duty to affirmatively act by advising, offering, or furnishing coverage. Carlson v. Mut. Serv. Ins., 494 N.W.2d 885, 887 (Minn. 1993); Urie, 405 N.W.2d at 889-90. In order to find special circumstances, the court considers whether the agent knew the insured (1) was unsophisticated with insurance; (2) was relying on the agent to provide appropriate coverage; and (3) needed protection from a specific threat. Gabrielson v. Warnemunde, 443 N.W.2d 540, 544 (Minn. 1989).

The Wobigs have failed to demonstrate the agent owed a duty that was breached during the procurement of insurance or that special circumstances exist.

Because the agent was never deposed, the record is completely silent as to his knowledge and reasons for acting as he did. There is no evidence in the record to support a claim that Joseph Wobig either relied on the agent to provide appropriate coverage or needed protection from any specific threat. Under these circumstances, there is no genuine issue of material fact that presents a triable issue on the question of negligence. For the same reasons, Safeco is entitled to summary judgment on the Wobigs' breach of warranty for a particular purpose claim. See Driscoll v. Standard Hardware, Inc., 785 N.W.2d 805, 817 (Minn. Ct. App. 2010) ("An implied warranty of fitness for intended use arises if a seller, at the time of a contract, has reason to know that the buyer has a particular purpose for the goods purchased, and the buyer relies on the seller's judgment or skill to select those goods.") (citing Minn. Stat. § 336.2-315 (2008)).

## III.  CONCLUSION

We affirm the district court's grant of summary judgment in favor of Safeco.

_____